UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **MELANIE ANN ORR**, | Case No. 3:15-cv-01736-KI |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security**, | |
| Defendant. | |

    Merrill Schneider
    Schneider Kerr Law Offices
    P.O. Box 14490
    Portland, OR 97293

        Attorney for Plaintiff

    Billy J. Williams
    United States Attorney
    District of Oregon

Page 1 - OPINION AND ORDER

Janice E. Hebert
Assistant United States Attorney
1000 SW Third Ave., Ste. 600
Portland, OR 97204-2902

Martha A. Boden
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Ste. 2900 M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Melanie Orr brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). I affirm the decision of the Commissioner.

## BACKGROUND

Orr filed applications for DIB and SSI on June 27, 2011, originally alleging disability as of July 7, 2008. The applications were denied initially and upon reconsideration. After a timely request for a hearing, Orr, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on September 25, 2013 and again on February 11, 2014. At that time she amended her disability onset date to May 8, 2011.

On March 7, 2014, the ALJ issued a decision finding Orr not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the final decision of the

Commissioner when the Appeals Council declined to review the decision of the ALJ on July 13, 2015.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R.

§§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  *Parra*, 481 F.3d at 746.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(g) and 416.920(g).

**STANDARD OF REVIEW**

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* (internal quotation omitted). The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.*

**THE ALJ'S DECISION**

According to the ALJ, Orr has the severe impairment of cervical degenerative disc disease, which does not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. Orr retains the residual functional capacity ("RFC") to perform light work, except she cannot climb ladders, ropes or scaffolds. She can only occasionally crawl and reach overhead bilaterally, but she can frequently handle bilaterally. She should avoid even moderate exposure to hazards, such as unprotected heights and moving mechanical parts, as well as extreme temperatures. She is limited to occasionally looking up.

Given this RFC, the ALJ concluded Orr cannot perform her past relevant work. She could, however, perform other work in the national economy, such as cashier 2, office helper, and photo copier. As a result, the ALJ found Orr was not disabled within the meaning of the Act.

## FACTS

At 50 years old on her amended alleged onset date, Orr had worked as a certified nurse aide for years, and then in the Nike Distribution Center sorting shoes until 2008. She last worked in an auto parts store in 2010. She had her GED. She lived with her brother and his family.

At one point, Orr testified she stopped working for Nike because she started experiencing chronic pain, but then clarified that she was laid off and there was no other work for her. She could not continue working for the auto parts store in 2010 because she could not lift anything more than five pounds.

Imaging in 2010 revealed mild degenerative changes in her lumbar spine, and advanced degenerative changes at C4-5 through C6-7. She attended five physical therapy sessions from October 2010 through November 2010, where she reported pain levels at 8 to 9/10 and moderate/severe difficulty with her activities of daily living. Tr. 330. She was supposed to have been seen two to three times per week for 30 days but she reported increased headaches and cervical/lumbar spine pain. She was discharged from physical therapy.

Orr sought treatment at Tuality Urgent Care in December 2010 for lumbar pain as a result of lifting and turning at work. She reported moderate pain. She was taking oxycodone for neck pain which she said did not help her lumbar pain. The doctor prescribed diazepam and told her not to work, perform heavy lifting, or drive on medications.

An MRI in January 2011 revealed no degenerative spondylosis at C4 through C6-7. At C4-5, she had mild central canal stenosis and mild to moderate bilateral foraminal stenosis, and at C6-7, she had severe right and moderate left foraminal stenosis.

Six months later, she sought treatment from Michael Hicken, MD, for a check-up on her hypothyroidism and continuation of her Oxycontin. Dr. Hicken described Orr as "well-appearing, no acute distress" and her neck as "supple." Tr. 338.

Orr returned to Tuality Urgent Care in November 2011 with fear of pneumonia, although she had no cough or shortness of breath; her symptom was mid-back pain. She was advised to use hot and cold packs.

Orr returned to Dr. Hicken again in March 2012 for a refill of her chronic pain medications. His notes indicate she was "[d]oing well without complaints are [sic] pain is stable. No other complaints at this time." Tr. 360.

Orr sought care from Tuality Emergency Department for dental pain in April 2013. She reported being on a pain contract and was not interested in pain medications, but was worried about infection. She received a dental injection and was instructed to see a dentist.

In June 2013, Orr returned to Dr. Hicken. Her hypothyroidism was asymptomatic, her neck was supple, she was well-appearing and in no acute distress. Dr. Hicken continued her on Oxycontin.

At her September appointment, Dr. Hicken filled out a functional capacity form for Orr. He opined that she met listing 1.04 because he thought there was evidence of nerve root compression. He thought Orr was dependent on Oxycontin to function, and that a physical therapy evaluation and treatment had not helped her. He thought she could lift and carry less than 10 pounds, stand/walk for two hours, and sit for a total of two hours but only for 30 minutes at a time. He thought she would need frequent positional changes and would need to lie down intermittently. He limited her reaching, handling, fingering, and feeling to occasionally, and

Page 7 - OPINION AND ORDER

reported neuropathic pain and tingling in her upper extremities. He thought she would experience side effects from medications, although he commented that she had tolerated Ativan and Oxycontin. He thought she would miss more than two days per month.

At the request of the agency, James Harris, M.D., examined Orr in October 2013. Dr. Harris did not have any imaging, but examined and interviewed Orr. Orr reported being able to walk a quarter of a mile before experiencing leg pain. She said she could not lift a gallon of milk. She was independent in her activities of daily living. Dr. Harris noted Orr walked normally from the waiting area, and she could walk on her heels and toes and tandem gait without difficulty. She could hop on each foot two times. She transferred from standing to the exam table without difficulty. Dr. Harris rated her strength at 5/5 with no asymmetry. Reflexes and sensation were normal. After cervical and lumbar range of motion testing, he thought it likely Orr had facet arthropathy in the cervical and lumbar spine, but did express concerns regarding the validity of the exam. He noted "[c]areful observation of her cervical motion during the interview demonstrated greater rotation and extension, compared to formal motion measurement." Tr. 439. Dr. Harris completed a functional capacity assessment, opining Orr was able to lift up to 10 pounds (based on her symptoms, as opposed to examination findings), could sit, stand and walk for an hour each at one time, but could sit for a total of eight hours, and could stand and walk a total of three hours. He thought she would have some limitations in reaching and pushing/pulling, but could frequently handle, finger and feel.

In November 2013, Dr. Hicken checked on her hypothyroidism (which was asymptomatic), her dental pain, and discussed her Oxycontin refill request. He noted that the clinic was phasing out treating chronic pain and he referred her to a pain clinic to manage her

Oxycontin prescription. He did not recommend changes to her medication. He began tapering her off of her medications.

Orr obtained a physiatry consultation with Kevin J. Kane, D.O., in December who noted she was sleeping, her posture was relaxed, and her gait and station were grossly symmetric. Orr complained of radiating pain into her deltoid with neck extension, rotation, and side bending. She felt no tenderness in the lumbar spine, but reported palpatory tenderness in the low cervical spine. Strength testing was normal, as was the sensory exam. Her straight leg raising test was negative. He diagnosed Orr with cervical spondylosis with advanced foraminal stenosis at C6-7 bilaterally, lumbar spondylosis, and opioid dependence. Dr. Kane strongly suspected marijuana use due to the overpowering smell, but she denied using it. He declined to prescribe opioids pending a drug test. Orr did not return to Dr. Kane.

Orr sought evaluation from Vladimir Fiks, M.D., with the Advanced Pain Management Center, the next month. He suggested epidural steroid treatment. She was out of oxycodone. Dr. Fiks declined to prescribe any more until she had undergone more comprehensive treatment, especially since she had not tried conservative treatment in recent years. He told her physical therapy would be mandatory and that cognitive behavioral therapy might be necessary. He did not see her again due to lack of insurance coverage.

Medical expert Phillip McCown, M.D., testified at the second hearing. He explained that degenerative changes happen to everyone with age, and here he did not see cord compression, neurological involvement, or nerve root compression. He did not think Orr's condition was severe enough to meet or equal a listing. He pointed out Dr. Fiks had not sent her to see a neurosurgeon or orthopedic surgeon; instead, he had recommended epidural steroids. Dr.

Page 9 - OPINION AND ORDER

McCown expected a slight decrease in range of motion and would restrict use of her neck for looking up, but would not limit reaching, grasping, or fingering. He reiterated that while the 2011 MRI revealed stenosis, there was no mention of cord compression or mild malacia, nor any sign of nerve root compression.

On February 18, 2014, after the second hearing, Dr. Fiks submitted a letter agreeing with Dr. Hicken's September 2013 functional assessment. He thought she was unable to work indefinitely due to her 20-plus years of chronic pain in her neck and back. He reported she could not complete routine activities of daily living and that her sleep was disturbed by pain. Examination revealed severe pain with range of motion, rotation, and extension.

## DISCUSSION

Orr challenges the ALJ's credibility analysis, as well as his assessment of her treating physicians' opinions.

I.      Orr's Credibility

Orr testified that she could not work because of her severe pain. She reported headaches and neck pain, and that her doctors told her she needed a neck transplant which was not possible. At the first hearing, in September 2013, she was taking pain medications and was not experiencing side effects. She reported fatigue from hypothyroidism, but she said she had not talked to any doctors about it because she had learned to live with it. She cooked for herself and picked up around the house, but did not do her own laundry. She shopped for groceries and drove. She spent her days watching television. At her follow-up hearing in February 2014, she testified that she had not been taking any pain medication and her pain was worse. She was taking muscle relaxants, was not doing much all day, and she would not take over-the-counter

medications because of bleeding she experienced when she was younger. She testified she had not used marijuana "for quite a while," which turned out to be a few months. When she used it she did so only "a little bit," which was a "couple of times per week." Tr. 46.

The ALJ found Orr not entirely credible about the extent of her symptoms. First, objective medical evidence did not support her statements. For example, the medical expert's testimony was that MRIs from 2003 and 2011 demonstrated only a slight increase in degeneration over time and did not show nerve root involvement or support significant exertional limitations. He also described Dr. Harris' examination findings. He relied on Orr's presentation to Dr. Hicken as doing well, asymptomatic, and without complaint. While the ALJ did not consider the folderol with Dr. Kane, since Orr testified that she strongly disputed the doctor's suppositions, he did note she was vague about her marijuana usage. The ALJ also underscored Dr. Fiks' concern that Orr had not tried conservative treatment in recent years. The ALJ mentioned Orr's daily activities were not as limited as one would expect given her testimony. The ALJ found Orr's statements about pain medications undermined her testimony, and that she stopped working for reasons other than her impairments.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the

claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence. *Id.* "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).[1]

Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Based on the summary above, the ALJ's reasoning is clear and convincing, and is supported by substantial evidence in the record. It is true, as Orr points out, that the ALJ mis-read Dr. Hicken's notes about Orr's condition as "doing well" and "asymptomatic," since those notes were directed at her hypothyroidism and not her neck pain. Nevertheless, Dr. Hicken did indicate in March 2012, with respect to her neck pain, that Orr was "doing well without complaints" and that her pain was stable, and in November 2013 she looked well and her examination was unremarkable. Tr. 360; 446. In fact, Dr. Hicken's treatment notes are devoid of any concerning neck examination findings at all and do not reflect Orr's reports of radiating

---

[1] The Commissioner suggests the clear and convincing standard need not control the analysis, encouraging application of the more deferential regulatory requirement for specific reasons supported by substantial evidence. Def.'s Br. 4, n.2. The Ninth Circuit has rejected her argument. *See Burrell v. Colvin*, 775 F.3d 1133 (9th Cir. 2014) (reasserting that the ALJ must provide "specific, clear and convincing reasons" to support a credibility analysis).

pain down her arms. Orr displayed normal gait, intact sensation, and normal strength on multiple examinations. Dr. Harris commented that any lifting or carrying limits were based on Orr's report of her symptoms, and not on any valid examination findings. The two pain consultants, Dr. Kane and Dr. Fiks, declined to provide opioids. Dr. Fiks suggested more conservative treatment first.[2] Thus, although the record is capable of a different interpretation, the ALJ's analysis is equally rational. *Molina*, 674 F.3d at 1110 (court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations).

Additionally, the ALJ was permitted to rely on Orr's inconsistent testimony about why she stopped working, at the time of her initial alleged disability onset date, when she later admitted she was laid off. *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010).

Finally, although Orr's daily activities could be interpreted as consistent with her testimony, there are some inconsistencies in her reported symptoms and activities that make the ALJ's analysis rational. *Molina*, 674 F.3d at 1110. Here, as the Commissioner notes, Orr's testimony about her limited strength and limited ability to use her hands conflicted with her ability to drive without problems and grocery shop on her own. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities inconsistent with testimony purporting to be limited in some way is clear and convincing reason to question testimony).

In sum, the ALJ did not err.

---

[2] Further, although the ALJ mentioned a positive straight leg raising test by Dr. Fiks, nothing in Dr. Fiks' chart reflects such a finding. Dr. Fiks found no neurological deficit, tr. 454, and Dr. Kane found negative straight leg raising the month before.

II. <u>Medical Evidence</u>

Orr challenges the ALJ's assessment of Dr. Hicken's opinion, as well as Dr. Fiks' opinion.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.  *Orn*, 495 F.3d at 632.  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  *Id.* (treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician).  Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066.  The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  *Widmark*, 454 F.3d at 1066 n.2.  An opinion of a nonexamining, testifying medical expert may serve as substantial evidence when it is supported by and is consistent with other evidence in the record.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

Since the opinions of the state agency consultants, the testifying medical expert, and Dr. Harris contradicted those of Dr. Hicken and Dr. Fiks, the ALJ was required to give specific and legitimate reasons supported by substantial evidence in the record to give less weight to the opinions of Dr. Hicken and Dr. Fiks.

A.    Dr. Hicken

The ALJ gave less weight to the functional limitations identified by Dr. Hicken because the form he completed was a check-the-box form, was unsupported by any findings, and contradicted his own treatment notes.  Although Orr disputes the ALJ's conclusion that there was no evidence of nerve root compression, the ALJ was entitled to rely on the testimony of Dr. McCown, the medical expert, who repeatedly pointed out the absence of imaging demonstrating cord compression or any sign of nerve root compression.  Dr. McCown additionally noted no one had sent Orr to a neurosurgeon to address her neuropathic pain.  Dr. McCown's opinion was consistent with Dr. Harris' examination findings.  The ALJ also summarized Dr. Hicken's appointments with Orr, pointing out Orr's pain was well controlled, that she was well-appearing and in no acute distress at her appointments, and that he checked the box for side effects from medications when Orr had denied any side effects.  Further, Dr. Hicken's treatment notes were devoid of any specific examination findings.

In sum, the ALJ properly rejected Dr. Hicken's opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  Further, the reasons the ALJ gave were specific and legitimate and supported by substantial evidence in the record.  *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (permissible to reject check-off reports from physicians that do not contain any explanation of the bases for the conclusions); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ is not required to accept the opinion of a physician, even a treating physician, if the opinion is " conclusory, brief, and unsupported by the record as a whole").

Page 15 - OPINION AND ORDER

B.     Dr. Fiks

The ALJ also found Dr. Fiks' opinion entitled to limited weight because he did not explain his opinion, there was no indication he had reviewed the medical record, and all but two sentences of his opinion were based on Orr's reports.  Whether Dr. Fiks was a treating or examining physician is irrelevant since, in the end, he saw her on one occasion.  Like Dr. McCown, Dr. Fiks noted "no neurological deficit" in either the lumbar or cervical spinal areas.  Finally, while Dr. Fiks reported that he based his opinion on his examination of her and on her daily activities, nothing in either his January 8, 2014 treating record or in his opinion reflects what those daily activities were or what he found on examination.  While the ALJ references a positive straight leg raising test, Dr. Fiks did not mention such a finding, and Dr. Kane specifically found negative straight leg raising the month before.  The ALJ's reasoning is specific and legitimate and supported by the record.  *Tommasetti*, 533 F.3d at 1041 (physician's opinion of disability may be rejected if it is "based to a large extent on a claimant's self-reports that have been properly discounted as incredible"); *Batson*, 359 F.3d at 1195 (opinions that are "conclusory, brief, and unsupported by the record as a whole" need not be accepted by the ALJ).

Orr additionally chastises the ALJ for not contacting Dr. Fiks before purchasing a consultative examination, but here the ALJ did not receive Dr. Fiks' opinion until after she was seen by Dr. Harris and after the hearing at which the medical expert testified.

///



///

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards. For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

DATED this ___24th___ day of August, 2016.


                     /s/ Garr M. King
                     Garr M. King
                     United States District Judge